**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GARRY JONES,

      Petitioner,

v.                                        Case No. 10-14476

JOHN DAVIDS,

      Respondent.

                                          /

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Garry Jones appears before the court for a second time, having originally filed
this habeas action in 2010. He challenges his conviction by jury of two counts of armed
robbery, Mich. Comp. Laws § 750.529, two counts of being a felon in possession of a
firearm, Mich. Comp. Laws § 750.224f, and two counts of commission of a felony with a
firearm, Mich. Comp. Laws § 750.227b.

The court granted relief on Petitioner's claim that his right to self-representation
was violated, but the Sixth Circuit disagreed and reversed. *Jones v. Bell*, 801 F.3d 556
(6th Cir. 2015). After the case was reopened to consider Petitioner's remaining claims,
the court granted Petitioner's motion to stay the case so he could exhaust additional
claims in the state courts. Petitioner's case is now ready for analysis and disposition in
the wake of those state post-conviction proceedings. For the reasons that follow, the
court will deny the petition and deny a certificate of appealability.

## I. BACKGROUND

The Michigan Court of Appeals summarized the facts underlying Petitioner's

convictions:

> Defendant was convicted of committing two separate armed robberies of the complainant [Robert Walker], one on June 3, 2006, and another on June 21, 2006. The principal evidence against defendant was the complainant's testimony. The complainant knew defendant and indicated that they had sold drugs together. The complainant testified that on June 3, 2006, defendant called his cell phone and requested $100. He told defendant that he would give him $100. Later that day, the complainant was driving a friend's Lexis when he saw defendant and stopped to give defendant the money. Defendant pulled a silver-gray semi-automatic handgun and said, "Give me all your sh*t." In turn, the complainant removed his jewelry, eyeglasses, and clothing. As he was standing naked, a second man, wearing a mask, came from the side of a house and collected his property at defendant's direction. Defendant and the unidentified man got into the Lexis and sped away; the keys had been left in the ignition. The complainant ran to a home where a man [Wade or Oscar Ellerbe] gave him jeans and a shirt and allowed him to use the phone. A friend drove the complainant home and his wife later drove him to the police station. The complainant further testified that on June 21, 2006, he arrived home after midnight and was walking up the steps to his front porch when defendant approached him, pointed a gun at him, and demanded his money. The complainant threw $600 or $700 on the steps, went into his house, and reported the robbery to the police the following morning.

*People v. Jones*, 2008 WL 5382926, at *1 (Mich. Ct. App. Dec. 23, 2008).

The court recounts additional evidence presented at trial relevant to Petitioner's

remaining habeas claims. First, Petitioner claims that his trial counsel failed to call as a

defense witness the victim's former girlfriend, Danielle Williams, who would have

testified that Walker falsely accused Petitioner as part of a drug-turf competition.

Relevant to that claim, Walker testified at trial that he knew Petitioner as someone he

worked with for about six months selling drugs. (ECF No. 8-5, PageID.243.) The two

men stopped doing business together but remained friends. (*Id.*, PageID.243-45.) The

individual they sold drugs to was under indictment at the time of Petitioner's trial. (*Id.*, PageID.244-45.) Williams was not called as a defense witness at trial, nor was her name mentioned at trial.

Next, Petitioner claims that his counsel was ineffective for failing to call Oscar and Wade Ellerbe as defense witnesses. Relevant to this claim, Walker testified at trial that he was left standing in the street naked after the first robbery. (*Id.*, PageID.260-62.) He ran across the street and through a field to the Ellerbe's house, a family he knew. (*Id.*, PageID.264.) Walker ran to the back door of the house where he encountered one of the Ellerbes who he thought was named either Oscar or Wade. (*Id.*, PageID.269-71.) Walker went inside, and he was given clothes to wear and a phone to use to call someone to pick him up. (*Id.*, PageID.271-73.) Petitioner claims Oscar and Wade Ellerbe would have testified that Walker never came to their house on the night in question.

Finally, Petitioner claims that his counsel was ineffective for failing to call his girlfriend Electa Hardnett as a defense witness. Hardnett claims to have been with Petitioner on the night of the second robbery. Relevant to this claim, Walker testified that sometime after midnight on June 21, 2006, he arrived at his Detroit house. (*Id.*, PageID.278-79.) He called ahead to his wife to unlock the front door. (*Id.*) As he walked from his car to the front door Petitioner robbed him again at gunpoint. (*Id.*, PageID.280-83.) Hardnett stated in an affidavit that Petitioner was at home with her the entire night of June 21, 2006.

Following his conviction and sentence, Petitioner filed an appeal of right. His appellate counsel filed a brief on appeal, claiming that (1) he was denied effective

assistance of counsel, (2) his verdicts of guilty were based on insufficient evidence and constituted a denial of due process, and (3) his sentences violated the constitutional protections against cruel and unusual punishment.

With respect to the ineffective assistance of counsel claim, Petitioner asserted that his counsel was unprepared for trial and only met with him in the courtroom. (ECF No. 8-9, PageID.622-24.) Petitioner asserted that he was prejudiced by his counsel's failure to prepare and meet with him because it led to counsel's failure to identify Oscar and Wade Elerby and Electa Hardnett as important defense witnesses. (*Id.*, PageID.598, 600-03, 622-23.)

Petitioner filed a motion to remand the case for a hearing on this claim that was supported by an affidavit from Hardnett, executed on April 16, 2008. (*Id.*, PageID.602-03). In pertinent part, Hardnett's affidavit states that "during the night of June 20-21, 2006 Garry Jones was at home with me at 3290 Whitney Street from before dark on June 20, 2006 until at least 9:00 a.m. on June 21, 2006." (*Id.*, PageID.602.) It further states that Hardnett was present at trial in July of 2007, identified herself to defense counsel and told him about her proposed alibi testimony, but defense counsel did not call her as a witness. (*Id.*, PageID.602-03.) The motion to remand, however, did not include affidavits from Wade or Oscar Ellerbe. The Michigan Court of Appeals denied Petitioner's motion to remand "for failure to persuade the Court of the need to remand at this time." (*Id.*, PageID.593.)

The Michigan Court of Appeals subsequently affirmed Petitioner's convictions in an unpublished opinion, rejecting Petitioner's claims on the merits. *Jones*, 2008 WL 5382926. Petitioner filed an application for leave to appeal in the Michigan Supreme

Court, but it was denied by standard order. *People v. Jones*, 764 N.W.2d 257 (Mich. 2009).

Petitioner then returned to the trial court and filed a pro se motion for relief from judgment, raising substantially the same claims he presented on direct appeal:

> I. Appellant was deprived of his right to self-representation and due process, under the state and federal constitutions, where the trial court refused to honor his  request to represent himself.
>
> II. Appellant was deprived of his rights to effective assistance of counsel and due process, under the state and federal constitution, where trial counsel did not consult with him until the day of trial.
>
> III. Appellant was deprived of his right to basic due process, under the state and federal constitutions, where there was insufficient evidence to support his armed robbery convictions.
>
> IV. Appellant was deprived of his right to effective assistance of counsel, under the state and federal constitutions, where appellate counsel failed to raise the above claims on direct appeal.

(ECF No. 8-13, PageID.814.) With respect to Petitioner's ineffective assistance of trial counsel claim, Petitioner simply renewed the argument that counsel was ineffective for failing to consult with him and prepare for trial. (ECF No. 8-13, PageID.812-20.) The motion, however, was not supported by any affidavits or offer of proof to show how Petitioner was prejudiced.

On November 12, 2009, the trial court denied Petitioner's motion. (ECF No. 8-11, PageID.755-60.) The court found that to the extent he was raising the same ineffective assistance of counsel claim he raised on direct appeal, review was barred by Michigan Court Rule 6.508(D)(2). (*Id.*, PageID.758.) The court also denied the claim on the merits because Petitioner had not demonstrated he was prejudice by his counsel's alleged deficient performance. (*Id.*)

5

Petitioner appealed to the Michigan Court of Appeals, but his application for leave to appeal was denied "for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." (ECF 8-11, PageID.737.) Petitioner appealed again, but the Michigan Supreme Court again denied relief by form order. *People v. Jones*, 789 N.W.2d 471 (Mich. 2010).

Petitioner then filed his federal habeas petition, raising the following claims:

I. Appellant was deprived of his constitutional right to self-representation and due process under both the state and federal constitutions, where the state trial court refused to honor appellants request to represent himself.

II. Appellant was deprived of his constitutional right to effective assistance of counsel and due process under both the state and federal constitutions where trial counsel did not consult appellant regarding his felony cases until the day of trial.

III. Appellant was deprived of his constitutional right to the effective assistance of appellate counsel under both the state and federal constitutions where counsel failed to raise the above claims submitted in this brief on direct appeal.

IV. The trial court decision denying relief on appellant's claim of his right to self-representation resulted in a decision that was contrary to and involved an unreasonable determination of the facts in light of our U.S. Supreme Court decision in *Faretta v. California*.

(ECF No. 1, PageID.2-3.) On December 19, 2013, the court granted the petition with respect to Petitioner's first habeas claim and declined to address his other claims. (ECF No. 12.) The Sixth Circuit reversed, finding that the state court adjudication of Petitioner's self-representation claim did not involve an unreasonable application of clearly established Supreme Court law. *Jones*, 801 F.3d at 564-65.

The case subsequently returned to this court for consideration of Petitioner's remaining claims. Petitioner moved to stay the case so he could present new claims to

the state courts in a second bid for state post-conviction review. (ECF Nos. 33.)
Petitioner indicated that he wished to present the state courts with newly acquired
affidavits from the missing defense witnesses to support his claim of ineffective
assistance of trial counsel. The court granted the motion and stayed the case. (ECF No.
36.)

On May 9, 2016, Petitioner filed his second motion for post-conviction review in
the trial court, raising the following claims:

> I. Defendant Jones is entitled to a new trial on the basis of newly reliable
> discovered evidence of four affidavits from four defense witnesses that
> trial counsel failed to investigate and defense counsel was constitutionally
> ineffective in failing to call these creditable and alibi witnesses at trial.

> II. Prosecutorial misconduct influenced the resulting conviction by
> improperly introducing and allowing perjured testimony to be committed by
> its main witness Robert "Rob" Walker.

(ECF No. 43-3.) Petitioner again asserted that his trial counsel was ineffective for failing
to timely consult with him, which led to a failure to call Osar and Wade Elerby and
Electa Hardnett. Petitioner also asserted for the first time that trial counsel failed to
discover and call Walker's former girlfriend, Danielle Williams, who would have testified
that Walker fabricated the two robberies in order to eliminate Petitioner as a source of
competition for drug dealing. (*Id.*)

In support of these claims, Petitioner provided affidavits from all four witnesses.
(*Id.*, PageID.1539-44.) Danielle Williams stated in her affidavit that Walker asked her on
June 3, 2006, to call the police and report that Petitioner had robbed Walker. (ECF No.
43-3, PageID.1539.) When she refused, Walker then called police himself, and he later
ended his relationship with Williams because of her refusal to help. (*Id.*) Williams further
stated that on July 4, 2015, she spoke with Oscar Ellerbe, and during this conversation

she learned for the first time that Walker's false accusation resulted in Petitioner facing

20 years in prison. (*Id.*) Williams also stated that she had seen Walker previously set up

other drug dealers in similar situations so that Walker could take over their drug turf.

(*Id.*, PageID.1540.)

Oscar Ellerbe stated in his September 26, 2015, affidavit that on June 3, 2006,

Walker did not come to his house naked, asking for clothes, and claiming that he was

robbed. (*Id.*, PageID.1541.) He stated that he arrived at court on November 13, 2006, to

testify to this, but Petitioner's attorney said that the trial was postponed. (*Id.*) Ellerbe

was never notified about the new trial date and so did not testify as he expected. (*Id.*)

Wade Ellerbe executed an affidavit on the same date containing substantially the same

account as his brother. (*Id.*, PageID.1542.) Petitioner also attached the affidavit from

Electa Hardnett that was prepared as part of his direct appeal. (*Id.*, PageID.1543-44.)

The trial court thereafter appointed post-conviction counsel for Petitioner, ordered

further briefing, and scheduled the motion for an evidentiary hearing. On the second

date scheduled for the hearing, the prosecution presented a lengthy offer of proof as to

the evidence it anticipated offering:

- A detective interviewed Williams, and Williams said that she had never dated Petitioner, had only met him a couple of times around the time period of the crimes, and that she had no communications with Petitioner since.

- Multiple recorded prison calls between Williams and Petitioner, however, dated back to 2011, several years before the alleged discovery of her testimony by Petitioner.

- The recorded calls showed that Williams and Petitioner spoke frequently and at length, and many of the calls ended with "I love you."

- Williams' twin brother, Daniel Williams, was an inmate at the same prison as Petitioner, and Williams sent messages through Petitioner to her brother during the calls.

- Williams stated in the affidavit that she heard Walker call the police to falsely report the robberies, but the trial record showed that Walker did not call the police but went physically to the police station to report the crimes.

- Walker is not listed in police records as the victim of any other robberies.

- Walker was expected to testify at the hearing that he never dated Williams, though he knew her and her family.

- Buster Jones and Patricia Jolly were expected to testify to facts indicating that a robbery occurred at the location and time of the first incident Walker described at trial, and that they assisted Walker after it.

- Police interviewed Wade Ellerbe, and he denied to them that he ever came to court expecting to testify. He also denied ever speaking to a defense attorney prior to trial.

- Ellerbe admitted to being a friend of Petitioner's for about thirty years, and Petitioner took refuge from the police prior to his arrest at the Ellerbe house.

- Ellerbe told police that Petitioner told him he would not have to come to court to testify.

- Police were unable to interview Oscar Ellerbe, but prison calls between Oscar and Petitioner were recorded.

- Petitioner told Williams in a recorded conversation to have Oscar sign something for him, and "act like he would come in and testify, but that Oscar would not have to ever come to trial because defendant did not want a new trial, he wanted the prosecutor to make him an offer."

- Petitioner also explained his plan to Oscar Ellerbe on a recorded call, telling him "I just need you to act like you're going to come. That's my play. I'm going to bluff them at the door."

- The prosecutor believed that after reviewing the evidence "that defendant is suborning perjury, and his witnesses have committed perjury."

(ECF No. 43-6, PageID.1562-69.)

Petitioner's appointed post-conviction counsel stated that he spoke with Petitioner regarding the prosecutor's offer of proof, and he indicated that based on the conversation his ethical obligations required him to terminate his representation of Petitioner. (*Id.*, PageID.1573.) The trial court noted that Williams had been subpoenaed to appear for the hearing and to the prior hearing date, but she did not appear. (*Id.*, PageID.1570, 1574-75.) The court granted the motion for counsel to withdraw, and it indicated it would issue an order denying Petitioner's motion because the only allegedly newly discovered evidence was to come from Williams, and she failed to appear. (*Id.*, PageID.1575-76).

The trial court thereafter issued an opinion and order denying the successive motion for relief from judgment. (ECF No. 43-7.) The court found that Petitioner had not demonstrated that his claims were based on newly discovered evidence sufficient to overcome the prohibition against filing more than one motion for relief from judgment under Michigan Court Rule 6.502(G)(2). (ECF No. 43-7, PageID.1578-80.)

The court noted that Hardnett's affidavit was submitted on direct review, so her purported testimony was known before Petitioner filed his first motion for relief from judgment. (*Id.*, PageID.1579.) The court further noted that the alleged testimony from Oscar and Wade Ellerbe was also not newly discovered given Petitioner's unsupported argument regarding them on direct appeal. (*Id.*) Finally, the court discounted the allegations in Williams's affidavit after noting that she failed to appear for the hearing on two occasions, citing the prosecutor's offer of proof outlining her prison calls with Petitioner, and finding that Petitioner did not attempt to refute the offer of proof at the

hearing. (*Id.*) The court denied the motion because Petitioner "failed to present new evidence pursuant to MCR 6.502(G)." (*Id.*, PageID.1580.)

Petitioner thereafter filed a delayed application for leave to appeal in the Michigan Court of Appeals. The court dismissed the application because Petitioner "failed to demonstrate his entitlement to an application of any of the exceptions to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment. MCR 6.502(G)." (ECF No. 43-9, PageID.1590.) The Michigan Supreme Court thereafter denied relief on the grounds that Petitioner failed to meet his burden under Rule 6.508(D). *People v. Jones*, 918 N.W.2d 812 (2018).

## II. STANDARD

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong . . . permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts' of

petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529

U.S. at 413).

### III. DISCUSSION

Aside from the self-representation claim resolved against Petitioner in the Sixth

Circuit, Petitioner raises two substantive habeas claims in his petition and supplement.

Petitioner's primary argument is that his trial counsel was ineffective in preparing for

trial, and that he was thereby prejudiced by the loss of the Ellerbes, Hardnett, and

Williams as defense witnesses. (ECF No. 42, PageID.1259.) Petitioner also argues that

the prosecutor committed misconduct by allowing Walker to testify falsely given these

witnesses' allegations that he fabricated his claims against Petitioner. (*Id.*) The court

interprets the petition as also raising the non-substantive claim that the ineffectiveness

of Petitioner's direct appeal counsel excuses his failure to properly present and support

his claims to the state courts on direct appeal.

As indicated above, Petitioner raised different aspects of these claims in his three

separate state court proceedings. Because the grounds for decision by the state courts

in each proceeding impacts the scope of federal habeas review, the court organizes its

analysis accordingly.

### A. Direct Appeal

On direct appeal, Petitioner asserted his counsel's inadequate preparation

resulted in the failure to call Hardnett and the Ellerbes, but he included only Hardnett's

affidavit to support the claim. After reciting the controlling standard, the Michigan Court

of Appeals rejected the claim as follows:

12

>Defendant claims that defense counsel should have called two men who
>lived in the home where the complainant allegedly ran following the first
>robbery to rebut the complainant's testimony that he arrived at their home
>naked, and should have also called the mother of defendant's child who
>allegedly would have testified that defendant was home at the time of the
>second robbery. Defendant has not provided witness affidavits for these
>proposed witnesses, or identified any evidence of record establishing that
>they could have provided testimony favorable to the defense that may
>have affected the outcome of trial. Defendant's unsupported assertion that
>the witnesses would have supported his defense is insufficient to
>demonstrate that he was deprived of a substantial defense. Consequently,
>this claim does not warrant reversal.

*Jones*, 2008 WL 5382926, at *2-3 (citations omitted).

A violation of the Sixth Amendment right to the effective assistance of counsel is

established where an attorney's "performance was deficient" and "the deficient

performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687

(1984). An attorney's performance is deficient if "counsel's representation fell below an

objective standard of reasonableness." *Id*. at 688.

To establish prejudice, the petitioner must show "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in

the outcome." *Id*. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The

likelihood of a different result must be substantial, not just conceivable.'" *Storey v.*

*Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S.

86, 112 (2011)). When deciding whether counsel's errors prejudiced Defendant, the

Court "must consider the totality of the evidence before the . . . jury," on the assumption

that "a verdict or conclusion only weakly supported by the record is more likely to have

been affected by errors than one with overwhelming record support." *Strickland*, 466

U.S. at 695-96.

On the whole, the standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotations and citations omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Turning first to Petitioner's general complaint that defense counsel had not prepared at all for trial, the trial record indicates that Petitioner voiced this concern at the start of trial, and he showed the trial court a copy of a grievance he filed against his attorney. (ECF No. 8-5, PageID.108.) The court responded, "I think he is prepared. And I talked to him extensively beforehand about these issues. And he's an excellent lawyer." (*Id.*, PageID.109.) Any conversation between the trial court and defense counsel, however, does not appear in the record.

Nevertheless, defense counsel's conduct throughout the trial belies Petitioner's allegation that trial counsel had not prepared for trial. Defense counsel's opening statement indicated his familiarity with the facts of the case, that the prosecution did not have evidence to corroborate Walker's accusations, and that Walker was falsely accusing Petitioner due to a drug-dealing dispute. (*Id.*, PageID.232-40.) Defense counsel was obviously well prepared to cross-examine Walker, the prosecution's only non-police witness. He used inconsistencies and gaps in Walker's statements in three

police reports and his testimony during the preliminary examination to effectively challenge Walker's testimony and suggest a motive to falsely accuse Petitioner. (*Id.*, 243-46, 310-38.) Defense counsel's closing argument likewise indicates his preparation of a coherent and competent defense theory. (ECF No. 8-6, PageID.449-67.) The record thus undermines Petitioner's contention that counsel did not prepare for trial.

With respect to the failure to call Wade and Oscar Ellerbe as defense witnesses, the Michigan Court of Appeals decision that Petitioner failed to demonstrate prejudice was reasonable. Petitioner made no evidentiary proffer during his direct appeal that either witness would testify favorably to the defense. It is well-established that conclusory allegations of ineffective assistance of counsel without evidentiary support are insufficient to warrant relief. *See, e.g., Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (noting that a habeas petitioner cannot demonstrate prejudice from the failure to call specific witnesses absent "evidence showing that they would have offered specific favorable testimony."); *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner claimed that the Ellerbes would have refuted Walker's testimony regarding the first robbery, but he proffered no evidence to the state courts to back his claim. This part of the claim was therefore reasonably rejected due to Petitioner's complete failure to proffer any evidence in support.

The same does not completely hold true, however, with respect to the allegation that trial counsel was ineffective for failing to call Hardnett as an alibi witness. Hardnett's affidavit was put before the state court in support of the remand motion. (ECF No. 8-9, PageID.602-03.) Her affidavit states that Petitioner was home with her from before dark

15

on the evening of June 20, 2006, until at least 9:00 a.m. on June 21. (*Id.*) She further states that she informed defense counsel about her alibi testimony but was not called as a defense witness even though she attended the entire trial. (*Id.*, at PageID.603.)

The state court concluded that "Defendant has not . . . identified any evidence of record establishing that [the defense witnesses] could have provided testimony favorable to the defense *that may have affected the outcome of trial*." *Jones*, 2008 WL 5382926, at *2 (emphasis added). This conclusion was not objectively unreasonable. Petitioner was charged with committing two robberies against Walker on different dates. Defense counsel initially successfully argued to have the charges tried separately. (ECF No. 8-5, PageID.114.) But against the advice of counsel, Petitioner under oath stated his desire to have the charges tried together. (*Id.*, PageID.115-116.) Hardnett's affidavit only provided an alibi for the *second* incident heard by the jury. Because the affidavit did not provide a complete alibi, a reviewing court could reasonably conclude consistent with the *Strickland* prejudice standard that Petitioner did not establish a reasonable probability of a more favorable result had Hardnett been called as a defense witness. *See Fargo v. Phillips*, 58 F. App'x 603, 607-08 (6th Cir. 2003); *White v. Kapture*, No. 00-73974-DT, 2001 WL 902500, at *8 (E.D. Mich. June 26, 2001); *Thomas v. Newland*, No. C-96-0547,1999 WL 66520, at *3-4 (N.D. Cal. Feb. 2, 1999); *United States ex rel. Emerson v. Gramley*, 902 F. Supp. 143, 147 (N.D. Ill. 1995).

Notably, Hardnett's affidavit lacks any detail to provide an explanation for her ability to recall a specific uneventful date two years after the fact. The second incident occurred on June 21, 2006, and Hardnett executed her affidavit on April 16, 2008. (ECF No. 8-9, PageID.603.) Hardnett simply states that she was with Petitioner at home from

16

before dark until the next morning on that date. (*Id.*, PageID.602.) The affidavit provides

absolutely no detail or explanation for why or how she purported to have a recollection

of that specific date, or how she knew Petitioner was with her for the entire night. The

conclusory and unexplained allegations in the affidavit—the only evidence proffered in

support of the claim—therefore did not compel the state court to find that Petitioner

established *Strickland* prejudice for his counsel's failure to call Hardnett as a witness.

Rather, it was reasonable for the state court to reject the claim based on the lack of

evidence offered in support.

The state court adjudication of Petitioner's ineffective assistance of counsel claim

on direct appeal therefore did not involve an objectively unreasonably application of

established Supreme Court law.

### B. First Motion for Relief From Judgment

Petitioner renewed his ineffective assistance of counsel claim in his first motion

for relief from judgment. The court reads the motion as largely repeating the allegations

of inadequate preparation raised on direct review; the motion did not include any

specific or new factual predicate to support the claim. The trial court denied the motion,

in part, under Michigan Court Rule 6.508(D)(2) because the claim was one that had

already been rejected on direct appeal.

Rule 6.508(D)(2) prohibits a Michigan court from granting relief if a successive

post-conviction motion "alleges grounds for relief which were decided against the

defendant in a prior appeal or proceeding under this subchapter, unless the defendant

establishes that a retroactive change in the law has undermined the prior decision."

Petitioner's claim did not involve a new retroactive change in the law. It was merely an

17

unsupported restatement—and therefore weaker version—of the claim presented to the state courts on direct review. Thus, the state court's reliance on Rule 6.508(D)(2) was essentially a determination that the claim had already been resolved against Petitioner in a previous appeal.

Accordingly, the second presentation of this claim to the state courts in Petitioner's first motion for relief from judgment does not provide a different or alternative basis for relief, nor does it provide an additional procedural basis for denying relief. *See Hicks v. Straub*, 377 F. 3d 538, 558, n.17 (6th Cir. 2004). As discussed below, the only significance the first motion for relief from judgment has in this case is that its existence impacted Petitioner's ability to file a second motion for relief from judgment under Michigan Court Rule 6.502(G).

### C. Second Motion for Relief From Judgment

Petitioner's second motion for relief from judgment raised his ineffective assistance of counsel claim for a third time, and he also included in his motion a claim that the prosecutor committed misconduct by allowing Walker to testify falsely.

Unlike his direct appeal and first post-conviction motion, however, Petitioner's second motion for relief from judgment added factual support to his claim in the form of affidavits from Oscar and Wade Ellerbe, and it added the claim that counsel failed to call Danielle Williams, Walker's ex-girlfriend, which was also supported by affidavit. Petitioner then used the allegations in these affidavits to support his claim that the prosecutor committed misconduct by allowing Walker to testify falsely. After appointing counsel and ordering a hearing, the trial court denied the motion under Michigan Court Rule 6.502(G) when Williams refused to appear to testify at the hearing. Respondent

asserts that review of this supported version of Petitioner's ineffective assistance of counsel claim and his prosecutorial misconduct claim is procedurally barred.

As an initial matter, Petitioner claims that he is entitled to habeas relief because the trial court failed to afford him a full and fair hearing to present his newly supported claims. As indicated above, the trial court determined that the only basis for considering a successive post-conviction review under Rule 6.502(G) would be testimony from Danielle Williams since the other three uncalled witnesses were known to Petitioner at the time of his first motion for relief from judgment and direct appeal. But when Williams failed to appear at two hearing dates, and in light of the prosecutor's unopposed offer of proof that indicated the statements in her affidavit were false, the court denied the motion without holding the hearing.

Claims regarding a failure to provide adequate state post-conviction review, however, are non-cognizable and cannot provide a basis for relief. There is no federal constitutional right to any form of state post-conviction review. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Thus, a federal habeas corpus petition cannot be used to challenge any alleged defect in state post-conviction review proceedings. *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) (affirming district court's decision that "habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief"). Any error by the trial court in the application of Michigan's post-conviction review scheme amounts to a non-cognizable claim of state law error. *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("The Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas

corpus review."). The state court therefore did not violate federal law by denying Petitioner a post-conviction review evidentiary hearing.

Turning to the grounds for the state court's denial of post-conviction relief, if a defendant fails to comply with state procedural rules in presenting his claims to a state court, and the state court relies on that failure as a basis for denying relief, the defendant may also be barred from presenting the underlying constitutional claims on federal habeas review. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). Federal habeas review is barred for such claims where the Court determines that the petitioner failed to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent" of federal law. *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Bickham v. Winn*, 888 F.3d 248, 251 (6th Cir. 2018); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). The last explained state court ruling is used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Here, the state trial court denied Petitioner's second motion for relief from judgment for Petitioner's because he did not comply with Michigan Court Rule 6.502(G); specifically, Petitioner failed to show that his claims were based on new evidence that was not discovered before Petitioner's first motion for relief from judgment or direct

appeal. (ECF No. 43-7, PageID.1579-80.) The court noted that the allegations

concerning Hardnett and the Ellerbes were known at the time of Petitioner's direct

appeal. (*Id.*) The court further found that Petitioner failed to demonstrate the existence

of newly discovered evidence regarding Danielle Williams. (*Id.*) She not only refused to

appear at the hearing, but the prosecutor also demonstrated without rebuttal that the

some of the contents of her affidavit were false. (*Id.*) The Michigan Court of Appeals

relied on the same procedural rule in denying relief. (ECF No. 43-9, PageID.1590.) The

Michigan Supreme Court subsequently issued an unexplained form order denial of

review. The state courts therefore clearly and expressly relied on Petitioner's failure to

comply with Rule 6.502(G) as a basis for denying review. And the Sixth Circuit has held

that Rule 6.502(G) "acts as an adequate and independent state ground for denying

review sufficient to procedurally default a claim." *Ingram v. Prelesnik*, 730 F. App'x 304,

311 (6th Cir. 2018) (citing *Morse v. Trippett*, 37 F. App'x. 96, 106 (6th Cir. 2002)). Thus,

review of the version of the claims presented to the state courts in Petitioner's second

motion for relief from judgment is barred by his procedural default.

 Petitioner is entitled to review of these claims only if he can show (1) cause for

noncompliance with the procedural rule and actual prejudice resulting from the alleged

constitutional violation or (2) that a fundamental miscarriage of justice has occurred.

*See Coleman v. Thompson*, 501 U.S. 722, 750-53 (1991); *Gravley v. Mills*, 87 F.3d 779,

784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some

external impediment frustrated his ability to comply with the state's procedural rule. *See*

*Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Coleman*, 501 U.S. at 753. Such reasons

include interference by officials, attorney error rising to the level of ineffective assistance

of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (citing *Murray*, 477 U.S. at 486-88).

Petitioner's claim that his direct appeal counsel was ineffective for failing to raise and support the new claims with affidavits from all four witnesses does not establish cause to excuse his default. It does not explain Petitioner's *own* failure to raise the issues in his first pro se motion for relief from judgment. *See, e.g., Wright v. Howes*, No. 2:07-CV-10965, 2013 WL 27914, at *7-8 (E.D. Mich. Jan. 2, 2013). Rule 6.502(G) requires a defendant to show that the new claims are based on facts not available when he filed his first post-conviction motion, not that the claims were unavailable only at the time of direct review. Petitioner offers no explanation for his failure to support his ineffective assistance of counsel claim and prosecutorial misconduct claim with the proffered evidence when he filed his first motion. Clearly, at that time, he knew about Hardnett and the Ellerbes, and he offers no explanation why he was unable to discover Williams. Indeed, he admits now that he spoke with her from prison—potentially as early as 2011. (ECF No. 45, PageID.1819.) And the bare fact that Petitioner is untrained in the law or was unfamiliar with Michigan's procedural rules does not provide a basis for establishing cause. *See Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995) ("[Petitioner's] pro se status and ignorance of his rights do not constitute cause excusing his failure to raise grounds before the state courts.").

Furthermore, Petitioner's lack of legal representation in his first state post-conviction review proceeding does not constitute cause because "[t]here is no constitutional right to an attorney in state post-conviction proceedings." *Coleman*, 501

U.S. at 752. For the same reason, the fact that Petitioner's appointed post-conviction counsel withdrew during his second proceeding does not constitute cause or provide a basis for habeas relief. The alleged ineffectiveness of counsel during state collateral post-conviction review is not a ground for habeas relief. *See* 28 U.S.C. § 2254(i); *see also Post v. Bradshaw*, 422 F. 3d 419, 423 (6th Cir. 2005).

Thus, Petitioner has not demonstrated cause to excuse his default, and the court therefore need not address whether Petitioner can demonstrate actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).

Finally, Petitioner has not established that a fundamental miscarriage of justice would result from a failure to review his new claims. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 537-38. To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has made no such showing. Indeed, contrary to her affidavit, Williams was not willing to testify in court that Walker asked her to make a false accusation against Petitioner, and that she knew Petitioner was in prison before she said she did in her affidavit. It turns out, in fact, that Petitioner was in contact and communicating with Williams and her brother while in prison, and that Petitioner and Williams were in some form of romantic relationship. It also appears that Petitioner informed the Ellerbes that they would not have to appear at a hearing and that he was just attempting to bluff the prosecutor into offering him a deal. The state court offered Petitioner a fair opportunity to play his cards after he finally made a sufficient proffer of exculpatory evidence, but

Petitioner had no cards to play. In short, Petitioner has not come close to demonstrating the existence of new reliable evidence demonstrating his actual innocence.

Accordingly, Petitioner did not comply with Rule 6.502(G)(2), and procedural default bars review of his newly supported ineffective assistance of counsel and prosecutorial misconduct claims. Additionally, he has failed to sufficiently demonstrate cause and prejudice or a fundamental miscarriage of justice.

As none of Petitioner's claims merit habeas relief, the petition will be denied.

### D. Certificate of Appealability

Before Petitioner may appeal this decision, the court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims and will therefore deny a certificate of appealability.

### V. CONCLUSION

IT IS ORDERED that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) and Supplement (ECF No. 42) are DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.


s/Robert H. Cleland                          /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  January 6, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, January 6, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                                 /
Case Manager and Deputy Clerk
(810) 292-6522


S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\10-14476.JONES.DenyingHabeasAndCOA.BHB.MAZ.2.RHC.2.docx